UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DEBRA AND RONALD MOON, | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 5:11-CV-180 |
| MAYOR CHARLES BROWN AND THE CITY OF JACKSON, GEORGIA, | : |
| Defendants. | : |

### DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COME NOW Mayor Charles Brown, in his official and individual capacity, and City of Jackson, Georgia, Defendants, and file this Brief in Support of Motion for Summary Judgment, respectfully showing to the Court the following:

### Introduction

This suit arises out of the October 10, 2010 towing of Plaintiffs' pick-up truck. Plaintiffs claim that Defendants the City of Jackson and Mayor Charles Brown violated their First, Fourth, and Fourteenth Amendment rights because, at the time the truck was towed, the bed of the truck contained a large campaign sign for Congressman Austin Scott. For the reasons that follow, Defendants are entitled to summary judgment on all of Plaintiffs' claims.

### Statement of Facts

On October 10, 2010, Mayor Charles Brown was driving through downtown Jackson when he noticed a truck parked on a city owned gravel lot with a large sign standing up in the bed of the truck. (Dep. of Charles Brown, January 24, 2012, 7: 6-11.) It was the only vehicle in the gravel lot. (Brown Dep. 9:19-21.) The lot had been used in the past by the employees of an

1

adjacent business, a drug store. (Brown Dep. 20:3-14.) However, they only did so by express permission from the City. (Id.) Otherwise, the lot was not used by the public for parking purposes because it was still under construction and was unfinished. (Brown Dep. 20:19-22.) The sign in the back of the truck was a campaign sign supporting Congressman Austin Scott. (Ronald Moon Dep. 24:3-6.) Mayor Brown was not aware of how long the truck had been parked there and did not know to whom the truck belonged at the time it was towed. (Brown Dep. 30:22 to 31:4.) However, he was aware that the truck was parked on City property without permission and that the sign in the bed of the truck violated the City of Jackson's sign ordinance. (Brown Dep. 7:6-11.)

The sign ordinance prohibits the placement of signs on property without the property owner's permission. (Jackson, GA Zoning Ordinance, art. XII, § 12-4(1)(a), p. 48, Plaintiff's Ex. 3 to Dep. of Charles Brown.) Moreover, no signs, regardless of their message, are permitted on public right of ways. Id. Further, the ordinance permits the city to remove a sign from the public right of way or from public property if in violation of the ordinance. Id. at § 12-5(6). Finally, the ordinance also prohibits the use of portable signs. Id. at § 12-6(3). Mayor Brown called the police dispatcher, Veronica Barlow, and gave a description of the vehicle and its location. (Brown Dep. 10:16 to 11:6.) Mayor Brown instructed that the vehicle be towed from the city lot.

Plaintiffs owned the truck and parked it on the City lot because of the lot's prominent position in downtown Jackson. (Ronald Moon Dep. 32:7-10.) Plaintiffs claim that Mayor Brown targeted their truck for towing because of the political message on the sign in the back. (Ronald Moon Dep. 55:22-25.) Plaintiffs claim that the Mayor is not a supporter of Austin Scott, and is politically aligned with the Democratic Party. (Ronald Moon Dep. 54:8-14, 60:1-9.) Mayor

Brown did not know the Moons personally before the incident in the present case and had only met them one time that he can recall. (Brown Dep. 4:10-22.) He did not have any personal animosity toward the Moons, and had no idea who was driving the truck with the sign in the back. (Brown Dep. 30:15 to 31:4.)

Mayor Brown voted for Austin Scott, not Scott's opponent, Jim Marshall. (Resp. to Plf.'s First Interrogatories to Defendants No. 7.) When the Plaintiffs were asked what evidence they had to support their belief that their truck was towed for political purposes, Moon claimed that it was widely known that Mayor Brown had "Democratic ties," and thus must have supported Jim Marshall. (Ronald Moon Dep. 54:8, 55:15-25.) When asked to elaborate, Ronald Moon claimed that Mayor Brown was aligned with the Democratic Party because of his voting history in primaries. (Ronald Moon Dep. 54:11-16.) Namely, Moon claimed that someone told him that Mayor Brown voted in the Democratic primary in the past. (Ronald Moon Dep. 55:2-4.) However, Moon also admitted that he knew that Mayor Brown had voted in the *Republican* primary for the past two elections; yet, he could not answer why that fact did not lead him to believe that Mayor Brown was in fact an Austin Scott supporter. (Ronald Moon Dep. 57:15-21.) Finally, when asked at his deposition whether he had any other facts to support his view that his truck was towed for political reasons, he stated "Not with me today, no." (Ronald Moon Dep. 57:22 to 58:2.)

Moon also claims that the Mayor selectively enforced the City's sign ordinance and that similar signs, including signs in the back of trucks along the public right of way, were not towed. (Ronald Moon Dep. 28:2-6.) Specifically, Moon claims that a supporter of a candidate Mike Patterson had a sign in the back of his truck for several days in a City parking lot that was not towed by the City. (Ronald Moon Dep. 18:10-21.) However, the Mayor testified that he never

saw the truck or sign in question. (Brown Dep. 35:21-24.) Part of Mayor Brown's duties as the Mayor of the City of Jackson was to uphold and enforce the ordinances of the City. (Brown Dep. 18:17-21.) Mayor Brown frequently called the police dispatcher to report illegal signs. (Brown Dep. 25:11-22.)

The Moons have now filed suit, claiming that Mayor Brown and the City of Jackson violated their First, Fourth and Fourteenth Amendment rights.

## Argument and Citation of Authority

**I. Summary Judgment Standard**

In ruling on a motion for summary judgment, the district court must view the evidence in the light most favorable to the non-moving party. See Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). However, summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Irby v. Bittick, 44 F.3d 949, 953 (11th Cir. 1995). Furthermore, the mere presence of an alleged factual dispute between the parties does not make summary judgment improper; a genuine issue of material fact must exist for a court to deny summary judgment. See Liberty Lobby, Inc., 477 U.S. at 248. Thus, a plaintiff must put forth sufficient evidence to "persuade the court that a reasonable fact finder could rule in the plaintiff's favor." Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1198 (11th Cir. 1997).

**II. Mayor Brown and the City of Jackson are entitled to summary judgment because Plaintiffs have no evidence that the towing of their illegally parked vehicle was politically motivated.**

Mayor Brown and the City of Jackson are entitled to summary judgment because Plaintiffs cannot demonstrate that their vehicle was towed in retaliation for their display of a sign

4

in the back of their truck. For a plaintiff to succeed on a First Amendment retaliation claim, the plaintiff must demonstrate that a retaliatory motive existed because of Plaintiff's protected speech. Bates v. Islamorada, Vill. of Islands, 243 F. App'x 494, 496 (11th Cir. 2007); Walters v. City of Andalusia, 89 F. Supp. 2d 1266, 1280 (M.D. Ala. 2000)  In other words, the Plaintiff must present "specific, nonconclusory factual allegations that establish improper motive and must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the improper motive." Brown v. Cochran, 171 F.3d 1329, 1332 (11th Cir.1999).

In the present case, Plaintiffs cannot demonstrate that Mayor Brown or the City of Jackson retaliated against them for their display of a sign in the back of their truck. When asked in his deposition what evidence he had that the Mayor had his vehicle towed in retaliation for the political message on the sign in the back of the truck, all Plaintiff Ronald Moon could offer was sheer speculation. Moon claims that it was widely known that Mayor Brown had "Democratic ties," and thus must have supported Jim Marshall in his campaign with challenger Austin Scott. However, it soon became clear that the only basis for this theory was that someone told him that Mayor Brown voted in the Democratic primary in the past. Of course, this theory looks even weaker in light of Plaintiff Moon's admission that he knew that Mayor Brown voted in the *Republican* primary for the past two elections. Further, Mayor Brown voted for Austin Scott in the election, not Jim Marshall.  Finally, when Plaintiff was asked at his deposition whether he had any other facts to support his view that his truck was towed for political reasons, he stated "Not with me today, no." As Plaintiff Moon's deposition testimony demonstrates, Plaintiffs have no evidence, much less evidence that rises to the level of specific and nonconclusory, that his vehicle was towed in retaliation for his support of Austin Scott.

Plaintiff claims that the Mayor and the City enforced the City's sign ordinance inconsistently, and that such inconsistency demonstrates that the Mayor had a retaliatory motive against his political speech. However, Plaintiff has no evidence that a similarly situated sign was both seen by the mayor or City of Jackson law enforcement officers and not removed by the City. Plaintiff cites the example of a campaign sign supporting a candidate Patterson that apparently was constructed in the back of a pickup truck and parked in the public right of way in the downtown Jackson area for several days without being towed. However, Plaintiff has no evidence that Mayor Brown ever saw this sign, and Mayor Brown testified that he never saw this sign. Further, Plaintiff has no evidence that a truck with a sign in the back was ever parked in the same gravel lot in downtown Jackson without being towed. Thus, Plaintiff has no evidence that the Mayor or the City targeted his truck simply because of the political message on the sign in the back. Because Plaintiff has no evidence of a retaliatory motive, his First Amendment claim must fail.

**III. Mayor Brown is entitled to summary judgment in his individual capacity on all of Plaintiffs' claims because no constitutional violation occurred and because he is entitled to qualified immunity or official immunity.**

Qualified immunity protects government officials unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "[O]nly in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." Braddy v. Florida Dept. of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998)(citations omitted). "Government officials are not required to err on the side of caution. And qualified immunity recognizes the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Willingham v.

Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001), *reinstated by* Willingham v. Loughnan, 321 F.3d 1299 (2003) (citations omitted).

In determining whether qualified immunity shields a government actor, the Court must first determine whether a constitutional violation actually occurred. See Hope v. Pelzer, 536 U.S. 730, 736 (2002); Stanley v. City of Dalton, 219 F.3d 1280, 1285 (11th Cir. 2000). If such a violation did occur, the burden shifts to the government official to show that he was acting within the scope of his discretionary authority. Barts v. Joyner, 865 F.2d 1187, 1189-90 (11th Cir. 1989). "A government official proves that he acted within the purview of his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Sims v. Metro. Dade County, 972 F.2d 1230, 1236 (11th Cir. 1992)(citations omitted). Then the plaintiff must show that the defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope, 536 U.S. at 739. That is, the defendants must have "fair warning" that their actions were unlawful. Id. at 740-41. Municipal officials do not violate clearly established law when relying on ordinances that have not been declared unconstitutional or that are not otherwise obviously facially unconstitutional. See Cooper v. Dillon, 403 F.3d 1208, 1220 (11th Cir. 2005).

Consistent with the First Amendment, a city can prohibit the placement of signs on public property and public right of ways. See City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789 (1984). Moreover, a city, consistent with the First Amendment, can completely ban the use of portable signs. See Don's Porta Signs, Inc. v. City of Clearwater, 829 F.2d 1051, 1052 (11th Cir. 1987). Thus, controlling Supreme Court and Eleventh Circuit caselaw indicates that the

regulation of the placement of portable signs on public property is permitted and consistent with the First Amendment.

Moreover, the seizure of personal property following the violation of an ordinance is not a violation of the Fourth Amendment. As the Supreme Court recognizes, "'[s]eizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'" Brower v. County of Inyo, 489 U.S. 593, 599 (1989). It is not unreasonable for a municipality to seize a vehicle that has been illegally parked. See South Dakota v. Opperman, 428 U.S. 364, 369 (1976)("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.") Thus, established law does not prevent a municipality from seizing personal property, including a vehicle, when the vehicle has been parked illegally.

In the present case, Mayor Brown is entitled to qualified immunity in his individual capacity. First, Plaintiffs cannot demonstrate that a constitutional violation occurred. Plaintiffs allege that their truck was towed because it contained a sign expressing their support for Congressman Austin Scott. However, there is no evidence that Mayor Brown directed Plaintiffs' vehicle to be towed because of the views expressed on the sign. Rather, the evidence indicates that Plaintiffs vehicle was parked on a City-owned lot without permission from the City and displaying a sign in a manner that violated the Code of the City of Jackson. Thus, the fact that Plaintiffs violated a City of Jackson ordinance by placing a sign on public property does not mean that a violation of their First Amendment rights occurred when the sign was removed.

But even if the First Amendment is implicated in the removal of Plaintiffs' sign from public property, Mayor Brown was acting within the scope of his discretionary authority at the time the alleged violation occurred and there is no evidence that Mayor Brown violated clearly
8

established law by enforcing the City of Jackson's ordinance. Mayor Brown was entitled to rely on the ordinance, and part of his duties as the Mayor of the City of Jackson was to promote the enforcement of the City's ordinances. The ordinance itself is also not clearly unconstitutional. As illustrated in the Supreme Court case of <u>City of Los Angeles</u>, the First Amendment does not clearly prohibit the regulation of sign placement on public property. Moreover, it is well within a municipality's authority to tow vehicles parked illegally on City property. Thus, because Mayor Brown did not violate clearly established law of which a reasonable municipal officer in his position would have been aware, Mayor Brown is entitled to qualified immunity in his individual capacity as to all of Plaintiff's claims.

**IV. Mayor Brown in his official capacity and the City of Jackson are entitled to summary judgment on all of Plaintiffs' claims because no constitutional violation occurred and, even if a violation did occur, the City is not liable for the violation.**

A suit against a mayor in his official capacity is in reality a suit against the municipality he serves. <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991). Thus, any claims Plaintiffs have against Mayor Brown in his official capacity should be treated as claims against the City of Jackson. As the Eleventh Circuit has repeatedly noted, "[a] city or local government agency 'may not be held liable for constitutional deprivations on the theory of respondeat superior.'" <u>Oladeinde v. City of Birmingham</u>, 230 F.3d 1275, 1295 (11th Cir. 2000) (quoting <u>Denno v. School Bd. of Volusia County</u>, 218 F.3d 1267, 1276 (11th Cir.2000)). Rather, to impose liability on a municipality under 28 U.S.C. § 1983 for the actions of an official, a plaintiff must establish "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004).

As an initial matter, "an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred." Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996). Here, no such violation has occurred, so it is unnecessary to examine the City's customs and policies. However, should the Court determine such an examination is in order, the Court will find that neither the City nor the Mayor instituted a custom or policy that led to any violation of a federally protected right.

"It is only when the 'execution of the government's policy or custom…inflicts the injury that the municipality may be held liable under §1983.'" Gold, 151 F.3d at 1350 (cits. omitted). Therefore, Plaintiff must first "identify a municipal 'policy' or 'custom' that caused [his] injury," and then prove the identified policy or custom was the "moving force behind the constitutional violation." Id. In this regard, the Eleventh Circuit has stated, "'municipal liability under §1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." Gold, 151 F.3d at 1350-51 (cits. omitted).

In the present case, Plaintiffs' claims against the City must fail. As discussed above, Plaintiffs cannot establish that a constitutional violation has occurred. Thus, the City cannot be liable to the Plaintiffs. Further, Plaintiffs do not challenge the constitutionality of the City's sign ordinance, which was one of the reasons Mayor Brown identified for towing Plaintiffs' vehicle. Therefore, the Plaintiffs must demonstrate that the City had some other custom or policy of violating Plaintiffs First and Fourth Amendment rights. Plaintiffs have no evidence of any such policy or custom. Mayor Brown routinely called in to the police dispatcher to report City ordinance violations, such as the one in the present case, but Plaintiffs cannot demonstrate that reporting City ordinance violations is a custom or policy that violates the Plaintiffs' constitutional rights. Therefore, the City cannot be liable for Plaintiffs' claims.

## V. Defendants Brown and the City of Jackson are entitled to official and sovereign immunity from Plaintiffs' state law claims

Plaintiffs also allege claims under Georgia law. Plaintiffs' state law claims must fail because Defendants are entitled to the immunities described below.

### A. Defendant Brown is entitled to summary judgment on Plaintiff's state law claims because he is shielded by official immunity.

"In Georgia, official immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malicious or corruption." Williams v. Solomon, 242 Ga. App. 807, 808 (2000) (cits. omitted). In other words, municipal officers are immune from liability for the negligent performance of discretionary duties. Sommerfield v. Blue Cross, 235 Ga. App. 375, 376 (1998); Pearson v. City of Atlanta, 231 Ga. App. 96, 101 (1998); Sinkfield v. Pike, 201 Ga. App. 652, 653-54 (1991).

In the present case, Mayor Brown was exercising his discretion when he called the dispatcher to report the Plaintiffs' illegally parked vehicle. Therefore, official immunity is applicable unless he acted "with actual malice or actual intent to cause injury." Williams, 242 Ga. App. at 808. In this case, there is absolutely no evidence of actual malice or actual intent to cause injury. Moreover, even if Plaintiffs could show that Mayor Brown harbored bad feelings toward Plaintiffs, which they cannot do, it would not be enough to overcome official immunity.

> Actual malice requires more than harboring bad feelings about another. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather ill will must also be combined with an intent to do something wrongful or illegal. To hold otherwise would mean that any plaintiff who suffers damages as a result of an act of a public officer or employee can pierce the State defendant's official immunity solely on the basis of the defendant's rancorous personal feelings toward the plaintiff, even though the defendant's actions in regards to the disliked plaintiff may have been completely lawful and legally justified. Equating actual malice with ill will would lead to this absurd result, contrary to well-established rules

of constitutional construction.

Adams v. Hazelwood, 271 Ga. 414, 415 (1999). In short, "actual malice" means a deliberate intention to do a wrongful act. Id. at 415. There is no such evidence in this case. Therefore, Mayor Brown is entitled to official immunity and summary judgment on Plaintiffs' state law claims.

**B. Defendant City of Jackson is entitled to summary judgment on Plaintiffs' state law claims because the City is shielded by sovereign immunity.**

In Georgia, municipalities are entitled to sovereign immunity. O.C.G.A. § 36-33-1. To the extent Plaintiff alleges a deficiency in the City's policies or procedures, or negligence in their implementation, the City is entitled to immunity under O.C.G.A. § 36-33-1(b). Under that statute, "a municipality is immune from liability for the negligent performance of its governmental duties, but may be held liable for negligence in the performance of its ministerial duties." Sinkfield v. Pike, 201 Ga. App. 652, 653 (1991).

The "functions" or "duties" of promulgating and implementing the policies at issue here are indisputably governmental. Therefore, even if the City was somehow negligent in promulgating or implementing policies or procedures, it is still entitled to sovereign immunity. Thus, sovereign immunity clearly applies and will bar Plaintiffs claims against the City, unless this immunity has been waived. It has not been waived. Therefore, sovereign immunity bars Plaintiffs' state law claims as a matter of law.

**VI. Conclusion**

For all the foregoing reasons, Defendants respectfully request this Court GRANT their Motion for Summary Judgment on all of Plaintiff's claims.

Respectfully submitted,

This 13th day of March, 2012.

/s/ Thomas F. Richardson
Thomas F. Richardson
State Bar No. 604325


/s/ Joseph D. Stephens
Joseph D. Stephens
State Bar No. 719383

Attorneys for Defendants, City of Jackson and Charles Brown

CHAMBLESS, HIGDON, RICHARDSON,
 KATZ & GRIGGS, LLP
3920 Arkwright Road, Ste. 405
P.O. Box 18086
Macon, GA 31209-8086

## CERTIFICATE OF SERVICE

      I hereby certify that on March 13, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

        Gerald Weber
        P.O. Box 5391
        Atlanta, GA 31107
        wgerryweber@gmail.com


        Attorney for Plaintiffs



        /s/ Thomas F. Richardson
        Thomas F. Richardson
        State Bar No. 604325


CHAMBLESS, HIGDON, RICHARDSON,
 KATZ & GRIGGS, LLP
3920 Arkwright Road, Ste. 405
P.O. Box 18086
Macon, GA 31209-8086