IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

---------------------------------------------------------

DEBORAH MOON and RONALD MOON, )
)
Plaintiffs, )
) Civil Action File
) No.:5:11-CV-00180-CAR
vs. )
)
MAYOR CHARLES BROWN, )
in his official and individual capacity )
and CITY OF JACKSON, GEORGIA, )
)
Defendants. )
_____ )

## PLAINTIFFS' BRIEF IN OPPOSITION TO SUMMARY JUDGMENT

Plaintiffs (Moons) file this brief in opposition to summary judgment and show that there are pivotal factual disputes rendering summary judgement inappropriate. Most importantly, a jury must determine whether to believe the original reason given by Mayor Brown for impounding the Moon's truck, i.e. "political signs" or the later reasons given by Mayor Brown in litigation. The former reason is constitutionally impermissible the later motivated by the treat of an ongoing lawsuit.

## STATEMENT OF FACTS

All City employees – the Mayor of 18-plus years, the Police Chief of 18-plus years and the dispatcher of 20-plus years – admit that the towing of the Moon's truck because of its political sign was an unprecedented event:

> Q: In your 20 years as dispatcher, had you ever received a call from any mayor of the City of Jackson to impound a vehicle?
>
> A: No.

Barlow Dep 11.

> Q: In your 18 years of experience as chief, had you known Mayor Brown or his predecessors to have had themselves a vehicle impounded?
>
> A: Not Mayor Brown.

Riley Dep. 7.

> Q: Had you in your 20 years as a dispatcher ever received any prior calls regarding the impounding of a vehicle because of a political sign?
>
> A: Not to my knowledge.

Barlow Dep 12.

Likewise, the documentation shows this event was not business as usual in Jackson. The three key pieces of paperwork involved in this case – the record rotation log, towed vehicle log and vehicle release form – list "Mayor Brown" as the law enforcement official responsible. According to the city employees these forms had *never identified anyone other than a police officer* as the law enforcement official. Riley Dep 9-11; Barlow Dep 15, 20. *Id.* Dep Exs P-6, 7, 8, 9, 10.

More specifically, Police Chief Riley and Dispatcher Barlow both testified that the impounding of the Moon's truck because of its political sign was the first time a vehicle had ever been towed from the downtown lot in question:

Q: Did you ever have any vehicles impounded from that lot -- other than the Moons' that we're talking about, did the department ever have any vehicles impounded from that lot?

A:     No, sir.

Riley Dep 15

>    Q:     Had you at any time in your 20 years as a dispatcher received prior
>    calls regarding vehicles needing to be towed in a parking lot because
>    it was not finished?
>
>    A:     Can't remember, but not to my knowledge. I don't think so.

Barlow Dep 12.

The lot had (1) No signs to indicate it was public property, (2) No signs to indicate

that work was being done at the location, (3) No signs to indicate that parking was

not permitted.  Riley Dep 7.  Moreover, as the Police Chief testified, citizens parked

their vehicles in the lot at the time with some frequency without any indicators that

they were somehow specially approved for parking.  Riley Dep 7 ("Q: Would there

have been any indicators to the Moons, either through signage or through prior

practice, that would indicate to them for some reason that they couldn't park their

truck there? A: Not that I'm aware of, no, sir.").  Dep Exs P-2, 4, 5 (photos).  Though

Mayor Brown claimed he knew the Moon's truck had no permission to park in the

lot, there was simply no way for he or others to know whether vehicles had

permission or not.  Brown Dep 20, Riley Dep 7.

>    A.    **Truck Impounding Incident:**
>          **Original Reasons Include "Political Signs"**

Ron and Debbie Moon have been involved in Republican politics for most of

their lives.  Mr. Moon has served as a Douglas County Commissioner, and Mrs.

Moon has for several years served as Chairwoman of the Butts County Republican Party.  R. Moon Dep 13-14; D. Moon Dep 5-6.

The Moons are active supporters of Congressman Austin Scott.  D. Moon Dep 9.  In October 2010, they wanted to display signs to show their support.  They had seen other trucks in Jackson with political signs affixed to their truck beds parked in public lots.  They thought it would be a good and visible way to display their support for Austin Scott's race for Congress.  R. Moon Dep 25.  They placed the sign in their truck bed and chose a lot where that was both centrally located and where they had previously seen citizens park their vehicles.  R. Moon Dep 28.  They used a frame for the bed of their truck that was identical to that being used by others who had political signs in the beds of their trucks over the prior several months.  Patterson Aff ¶¶ 3-7.

On October 10, 2010, the Moons parked their truck in a parking lot on their way to church.  It was located in a visible spot near downtown, and there were no signs that indicated they could not park there.  R. Moon Dep 31; D. Moon Dep 16.  Within 15 minutes, Mayor Brown was on the phone to Dispatcher Barlow ordering the dispatcher to "tow immediately." The Mayor said to Barlow "well, we've got a truck that's in the city parking lot that's not finished with a political sign on it..... [W]ill you have it towed from the city parking lot? I said, yes, sir, I will."  Barlow Dep 11, 17; D. Moon Dep 36.  Mayor Brown did not indicate that the location of the

vehicle was in the right of way. The Mayor said nothing about the sign violating a sign ordinance or any criminal code.  Barlow Dep 12-13, 22-23.  Though Mayor Brown's order was extraordinary, Dispatcher Barlow obeyed Mayor Brown's order to tow a vehicle because:

> A:    Let me put it to you like this: That's my boss, and if my boss say do something while I'm working in his job, I'm going to do what he tell me to do.

Barlow Dep  18.

When the Moons returned to the lot after church, their truck was gone.  D. Moon Dep 21.  They thought it was stolen, but when they called the police station, they learned that their truck had been impounded by the Mayor because of the political sign. Mr. Moon described it as:

> I was flabbergasted. I was just -- I was in shock. I was totally in shock.  I mean, we're law-abiding citizens that try to do the right thing. We're active in our community. We were just in shock.

R. Moon Dep 35-36.

Both the Dispatcher and the towing company told the Moons that the Mayor had their truck towed because it had a "political sign."  D. Moon Dep 22, 24, 25, 31 ("she said, you know, because of political signs"); 38 ("tow immediately because it had political signs").  Moon Dep Exhibit D-1 (contemporaneous notes).

### B.    <u>Mayor's New Reasons for Impounding Given in Litigation</u>

After this lawsuit was filed, the Mayor advanced new reasons for the towing

of the vehicle. He still concedes he stated that the "political sign" was indicated to Dispatcher Barlow,[1] but has now added that the Moon's truck was parked illegally and in violation of the sign ordinance. Brown Dep 2-3, 7-8, 12-13.[2] The Mayor admitted that there was no signage to indicate to the Moons that their vehicle was illegally parked or even to notify that the lot was city owned or under construction. Brown Dep 9. Police Chief Riley testified that there was no way "to determine which vehicles were permitted to be there and which vehicles were not permitted to be there" and that the "absence of notice" meant that there would be no basis for a trespassing claim. Riley Dep 15-16; Brown Dep 20.

As to the sign ordinance, Chief Riley concluded that even a bumper sticker or attached metal sign on a vehicle would be treated like the Moon's sign under the sign ordinance under the Mayor's interpretation. Riley Dep 5-7; R. Moon Dep 48;

---

[1] While the Mayor claims he stated "political sign" to assist in identifying the truck: (a) it was the only truck in the lot and (b) Dispatcher Barlow's notes indicate that the Mayor gave the dispatcher the Moons tag number (a fact he denies). *Compare* Barlow Dep 21 and Exhibit 10 (Mayor gave tag number) *with* Brown Dep 28 (Mayor claims did not have tag number). Dep Exs P-10 (tag number in dispatcher notes of call with Mayor)

[2] After litigation ensued, the Mayor indicated that the Moon's sign was a portable sign in violation of Jackson Ord 12-6. Brown Dep 12. He distinguishes bumper stickers and metal signs on vehicles as somehow being attached and permitted while the Moon's sign was not. Brown Dep 15. Yet he concedes that he did not check whether the Moon's sign was attached or not. Brown Dep 17. Nor did the Mayor request any right-of-way measurement be done prior to towing. Brown Dep 38. Chief Riley does not embrace the Mayor' distinction between the Moon's sign and bumper stickers under the sign ordinance. Riley Dep 5-7. *See also* Patterson Aff ¶¶ 3-7.

D. Moon 44 (Chief agreed that "too close to courthouse" or "political sign" were not valid reasons to impound).

### C.    **Enforcement of Sign Limits Content Based**

While real estate signs would appear to be covered by the ordinance, officials *seize political signs but not real estate signs*. Patterson Aff ¶ 7 (Transcript at 2-5: Perry Ridgeway, Street Division of City of Jackson Department of Public Works stating that as the primary enforcer of the sign ordinance for the City of Jackson that he "never" takes "real estate signs" but does take "political signs"). Moreover, other political signs displayed throughout public areas in the City of Jackson were not similarly treated. Commissioner Patterson testifies that his supporters had four trucks that used the same set-up for political signs in their truck beds as the Moon's truck. For months, these trucks were parked in the right–of-way in public and private lots. Yet, with different political content, none were impounded. Patterson Aff. ¶¶2-7; R. Moon Dep 18, 26; D. Moon Dep 13.

## ARGUMENT AND CITATIONS OF AUTHORITY

I.    **A JURY QUESTION IS PRESENTED ON FIRST AND FOURTH AMENDMENT CLAIMS AS MAYOR BROWN'S DECISION WAS EXPLICITLY CONTENT BASED AND HIS SUBSEQUENT OTHER REASONS FOR IMPOUNDING ARE CONTRARY TO BOTH THE JACKSON CODE AND INTERPRETATIONS OF LAW ENFORCEMENT**

Defendants wrongly suggest that the Moons must show political bias against them or their favored candidate, Congressman Austin Scott, to prevail on a First

Amendment claim i.e., "viewpoint discrimination." Ds S/J Brf at 3, 5. While there is evidence of viewpoint discrimination,[3] the <u>Moons primarily argue</u> that because the Mayor specifically indicated that the reason for impounding was that the sign was "political," a jury question is presented on whether the Mayor and City violated the <u>First Amendment requirement of "content" i.e., subject matter neutrality</u>. In other words, a jury can find that Defendants singled out political signs, as opposed to other content, as city employees in fact admit. This Circuit explained the legal distinction: that even if a regulation of political speech is viewpoint neutral, i.e., not favoring certain candidates, it may still be impermissibly content based:

> **The County also argues the Ordinance is not content-based because it applies equally to all political speech. That argument misses the mark completely.** It asserts only that the Ordinance does not discriminate based on viewpoint and fails to address the issue of subject-matter discrimination...... Neither in its brief nor at oral argument has the County disputed Burk's assertion that this language

---

[3]     There is some evidence in this record to support the notion that Mayor Brown impounded the Moons truck because he opposed certain candidates i.e., viewpoint discrimination under the First Amendment. Brown Dep 5; R. Moon Dep 56-60; D. Moon Dep 10. Indeed, as the Affidavit of Commissioner Patterson indicates, he had no less than four trucks with signs for his own candidacy prominently parked in a variety of lots throughout the City of Jackson for several months. These signs used the same frame as the Moons' truck and sign, only the political content was different. None were towed. This evidence creates a jury question as to viewpoint discrimination, but as discussed *infra*, the Moons' argument based on content discrimination is even clearer. Patterson Aff. ¶¶ 3-7.

targets "political" expression, however defined. Nor has the County disputed the fact that the Ordinance leaves other speech untouched. The Ordinance therefore classifies and regulates expression on the basis of content. *Burk v. Augusta-Richmond Cty.*, 365 F.3d 1247, 1251 and n. 6 (11th Cir. 2004) (emphasis added).

"[A]s a general matter, ... government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002). "Content-based regulations are presumptively invalid." *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992). They are subject to strict scrutiny under the First Amendment, and rarely survive.

Not only is targeting speech because it is "political" "content-based" and "presumptively unconstitutional," this Circuit further recognizes that political signs in particular are at the very core of First Amendment protection:

> This case involves the broadest of First Amendment rights because it concerns the right of a political candidate to publicize her candidacy during the heat of a campaign. *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 346 (1995) ("[T]he category of speech regulated by the Ohio statute occupies the core of the protection afforded by the First Amendment: [d]iscussion of public issues and debate on the qualifications of candidates ....") (internal quotation marks omitted); *Eu v. San Francisco County Democratic Cent. Comm.,* 489 U.S. 214, 223, 109 S.Ct. 1013, 1020 (1989) ("[T]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office.") (internal quotation marks omitted); *Buckley v. Valeo,* 424 U.S. 1, 14 (1976) ("Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people.") (alteration and internal quotations omitted); *Weaver v. Bonner,* 309 F.3d 1312, 1319

(11th Cir.2002) ("A candidate's speech during an election campaign occupies the core of the protection afforded by the First Amendment.") (internal quotation marks omitted); *Fed. Election Comm'n v. Pub. Citizen,* 268 F.3d 1283, 1287 (11th Cir.2001) ("Discussing candidates' qualifications and advocating their election or defeat is pure political speech that occupies the core of the First Amendment's protection.").

*Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1229 (11th Cir. 2006) (striking down sign ordinance that disfavored political signs). Treating political signs less favorably than real estate signs is content -based and unconstitutional. "In sum, under the sign ordinance it is easier, cheaper, and faster for Beaulieu to post a real estate sign than a campaign sign. Because political signs are subject to more regulatory burden than real estate signs, the sign ordinance discriminates against political speech in favor of commercial speech. It is a content-based regulation." *Id.* at 1233.

This Circuit has repeatedly held that regulating political or other signs or speech differently from other signs or speech is "content based" and subject to strict scrutiny. *Dimmitt v. City of Clearwater,* 985 F.2d 1565 (11th Cir.1993) (sign ordinance struck down for exempting certain signs); *Solantic, LLC v. City of Neptune Beach,* 410 F.3d 1250 (11th Cir.2005) (same). This is particularly true where political signs are treated more harshly than commercial signs. *See Metromedia v. City of San Diego,* 453 U.S. 490, 507–508 (1981) (striking preferential treatment of commercial

newsracks).[4]

A jury can certainly conclude that Mayor Brown towed the Moon's truck because of its "political sign." That is the very reason the Mayor gave to justify his order to impound the Moons' truck, first to the dispatcher and later the Police Chief. That is the reason given to the Moons by the Police Chief and the truck impounding company. Likewise, the recording of Butts County Commissioner Patterson's discussion with the Jackson officials enforcing the City's sign ordinance reveals that political signs are prohibited in the right-of-way while real estate signs are not, and that some political signs are treated more favorably than others. Patterson Aff ¶¶ 3-7. And the unprecedented nature of the Mayor's actions, as reflected in the paperwork, further supports the claim that content or viewpoint neutrality was breached. Thus, a jury question is posed.

At best, the later offered reasons given in the midst of this litigation by Mayor Brown for towing the vehicle create a jury question of mixed motives. *See generally Watchtower Bible and Tract Soc. of N.Y. v. Village of Stratton*, 536 U.S. 150, 170 (2002) (Breyer, J., concurring) (suggesting courts should look at "real reasons"

---

[4]    For decisions collecting the authorities from all Circuits see: *Reed v. Town of Gilbert, Ariz.*, 587 F.3d 966, 982 (9th Cir. 2009) (collecting cases holding that differential treatment of political signs versus commercial and real estate signs is a content-based restriction on speech); *Ballen v. City of Redmond*, 466 F.3d 766 (9th Cir. 2006) (striking down portable sign ordinance that had exemption for political and real estate signs).

given for restricting speech, and not later ones crafted by a "battery of constitutional lawyers"). Moreover, the post-hoc reasons now given by the Mayor are weak: no signs advised citizens the lot was a no trespassing area, other citizens parked vehicles there without incident and without any indicators that they had permission, other trucks had signs in their beds and were not towed despite being in rights-of-way, and Chief Riley testified that the Mayor's interpretation of the sign ordinance would bar bumper stickers and magnetic signs on vehicles in public roadways (also a First Amendment violation) was questionable. Finally, the unprecedented nature of the Mayor's actions itself raises the possibility of conduct violating the Constitution. *See Fong v. City of Zephyrhills*, 2011 WESTLAW 1575382 (M.D. Fla. 2011) (denying qualified immunity and performing mixed motive analysis in free speech case).

A jury can conclude that Mayor Brown, the final decision maker for the City of Jackson,[5] targeted the Moons truck because of its political sign in violation of the

---

[5] The City claims there is no custom or policy upon which municipal liability rests. Ds S/J Brf at 9-10. Not so. First, Mayor Brown and the City conceded that he was the final decision maker for the impounding decision. D's Response Interrogatory 3 ("The final decision maker was Mayor Brown"); Brown Dep 4. Second, Dispatcher Barlow clearly considered the Mayor to be the final decision maker. Barlow Dep 18.

Municipal liability here is akin to that in *Pembauer v. City of Cincinnati*, where a district attorney's phone call instructing officers to "go in and get the witness" was a final policymaking decision for the municipality. As the Court there recognized, a "policy which ordered or authorized an

First Amendment.  *See* D's Response Interrogatory 3 ("The final decision maker was Mayor Brown").   The jury could further decide that the seizure because of a "political sign" was without probable cause of criminal conduct in violation of the Fourth Amendment.

## II.   <u>QUALIFIED IMMUNITY IS NOT A BAR TO INDIVIDUAL DAMAGES</u>

The Moons agree with the Defendants general description of the doctrine of qualified immunity as a potential defense for Mayor Brown when sued in his individual capacity for damages:

> Once a constitutional violation is found (or it is determined that whether there was one depends on disputed factual issues) and the discretionary action element is established, the question is whether the official's alleged acts or omissions "violate clearly established statutory or constitutional rights."   The standard for determining whether a right is well-established for purposes of qualified immunity is whether the right violated is one about "which a reasonable person would have known."  We recognize three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction.

_____

unconstitutional act can be established by a single decision by proper municipal policymakers," 475 U.S. 469, 482 n.11 (1986), "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." <u>Id</u>. at 481.   "[A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. <u>Id</u>. at 482 n.11. "If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." <u>Id.</u> at 481.

*Goebert v. Lee County*, 510 F.3d 1312, 1330 (11ᵗʰ Cir. 2007) (citations omitted).[6]

Here, qualified immunity does not apply. A jury can find that the Mayor decided to tow the Moon's truck because it had a "political sign" – which is all he said to the dispatcher and police chief, and which is what the Moons were told was the reason for their truck being impounded. The mid-litigation reasons now given – right of way, portable sign, parking lot barred to non-approved vehicles etc. – all have their problems factually and legally, but at best create a mixed motive issue for jury determination.

If the jury determines that in fact Mayor Brown towed the Moon's truck because of political signs, while other signs are permitted, then there is clear Eleventh Circuit case law that bars the qualified immunity defense. *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1229 (11ᵗʰ Cir. 2006) (striking down sign ordinance that disfavored political signs); *Dimmitt v. City of Clearwater*, 985 F.2d 1565 (11th Cir.1993) (sign ordinance struck down for exempting certain signs); *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250 (11th Cir.2005) (same).

Likewise, as to Fourth and Fourteenth Amendment claims, the law is clearly established that one does not have cause to tow a vehicle from a lot totally free of any signage that parking is prohibited. *See* O.C.G.A. § 16-7-21(b)(2) (trespassing offense requires "notice from the owner, rightful occupant or, upon proper

---

[6]     The Moons do not contest that the acts were "discretionary."

identification, an authorized representative of the owner or rightful occupant that such entry is forbidden"); *Rayburn v. State*, 250 Ga. 657, 657 (1983) (notice must be "sufficiently explicit to apprise the trespasser what property he is forbidden to enter"). If there was no cause to seize the Moon's truck, the Fourth Amendment violation is clear. *Thorton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998) ("It this clearly established that an arrest [or seizure] made without probable cause violates the Fourth Amendment"); *Williamson v. Mills*, 65 F.3d 155 (11th Cir. 1995) (reversing district court grant of qualified immunity "because Mills lacked even arguable probable cause" and "[w]hat was fatally missing...was a link" to any suspected criminal activity).

Because a jury can conclude that the reason actually given at the time of impounding was the actual reason, and because that reason is clearly unconstitutional, qualified immunity is no shield.

## III.   **STATE LAW CLAIMS ARE NOT BARRED BY IMMUNITY**

### A.   Brown's Actions Are Not Protected by Official Immunity

Defendant Brown is not shielded from official immunity against the Moon's state law claims. Ds S/J Brf at 11. Brown mischaracterizes the nature of the actions that give rise to the Moon's claims to avail himself to this immunity. Further, Brown argues that since his actions were without malice or deliberate intention to do a wrongful act, that official immunity applies. *Id*. While the Moons agree that

Brown exercised his discretion in ordering the tow truck to remove the Moon's vehicle, such actions were merely the means to Brown's unconstitutional ends – that is the suppression of "political speech" as exercised by the Plaintiffs. A jury could find those unconstitutional ends were deliberately or intentionally achieved through Browns' wrongful acts. Thus, official immunity is not available to Brown in such circumstances.

The Moon's state law claims assert that Brown's conduct consisted of engaging in content-based discrimination of Plaintiffs' speech by having the political sign affixed to the Moon's truck removed from the public view. Complaint, ¶11. Defendant's recast this action as merely "calling a dispatcher to report an illegally parked vehicle." However, the conduct in question was Brown's concerted and intentional actions to carry out the removal, not of the Moon's truck, but of the political sign being prominently displayed in the truck. Brown Dep 11. Brown testified that in order to have the political sign removed he:

- Saw the Moon's vehicle parked on city property; Brown Dep 6.

- Viewed the sign on the Moon's vehicle and concluded that the sign contained political content; *Id.* at 11;

- Determined without reference to any city ordinance or code section that the Moon's vehicle was illegally parked on a city right-of-way; *Id.* at 4, 22-23.

- Took the affirmative step to contact the dispatcher for the City of Jackson law

enforcement and order that The Moon's vehicle be towed from its position because of its "political sign" *Id.* at 10, 18; Barlow Dep 11.

Official immunity will not shield Brown from discretionary actions done with willfulness, malice or corruption. *Daniels v. Gordon,* 232 Ga. App. 811, 813.  As the Georgia Constitution provides:

> [A]ll officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.  Ga. Const. Art. I, Sec. 2, Par. 9(d) (1995).

"According to the plain language of subsection (d), state officers and employees and those of its departments and agencies are subject to suit only when they negligently perform or fail to perform their 'ministerial functions' *or when they act with malice or intent to cause injury in the performance of their 'official functions.'*" *Gilbert v. Richardson*, 264 Ga. 744, 752-53, 452 S.E.2d 476 (1994).  The Constitution provides no protection for discretionary acts performed with malice or intent to injure.  *Id.* at 753.

Plaintiffs concede that Brown exercised his discretion in carrying out his order to have the Moon's political sign removed from the public's view.  A jury could conclude, however, that it was Brown's intent to limit, based on content, the

Moon's political speech.  In Brown's own words as he spoke to the dispatcher the day of the incident:

> He say, good morning, Ms. Rock.  I said, good morning, Mayor; how're you. And he said, well, we've got a truck that's in the city parking lot that's not finished with a political sign on it.  He say, will you have it towed from the city parking lot? I said, yes, sir, I will. And that was all the mayor said to me.

Barlow Dep 11.  Brown admitted during his deposition that the problem with the Moon's vehicle was:

> Q:     Okay. Now, when you saw this truck, where was it parked?
>
> A:     When I saw it, it was parked on city property that we referred  to as the city parking lot because it was going to be a future city parking lot. It was not a city parking lot at the time. But it was parked on city property and, like I say, in an area that was not open with the sign.
>
> Q:     Okay. And was the problem that the vehicle was parked there at all, or was the problem that the vehicle was parked there with a sign?
>
> A:     Both.
>
> Q:     And what was the problem with the vehicle simply being  parked there?
>
> A:      Well, there were two problems: Number one, it was on city property without permission, and it had the sign, so.  Brown Dep 7

While Brown claimed that the actual viewpoint of the sign was not in issue, the fact remains that Brown without condition or qualification ordered the removal of a political sign from the public view.  A jury could impute the intention to act unconstitutionally – finding that the motivation for the Brown's actions, while

-18-

clouded by shifting and inconsistent explanations during discovery, was to censor political speech. As a result, Brown cannot avail the shield of official immunity for his intentionally illegal conduct.

**B.     Sovereign Immunity is no Shield Against Constitutional Claims**

The Moons raised claims under Article I, Section I, Para. II, III, V, VII, IX and XIII of the Georgia State Constitution. As such, Defendants err when asserting that sovereign immunity shields them from liability as a matter of law. Ds S/J Brf at 12.

Indeed, there is no sovereign immunity protection for claims raised pursuant to the state constitution. *Smith v. Floyd County,* 85 Ga. 420, 424 (1890) (the violation by a county of a constitutional right of the citizen must by necessary implication raise a cause of action in favor of the citizen against the county.) Further, damages for state constitutional claims also are not barred. *Kilgo v. Department of Corrections*, 202 Ga. App. 50 (1991) *See also, State Board of Education v. Drury*, 263 Ga. 429, 430 (1993) ("Since the recovery of just and adequate compensation for private property which is taken for public purposes is itself an express constitutional right, sovereign immunity is not a viable bar to an action to enforce that right."); *CFI Constr. Co. v. Board of Regents of Univ. Sys.*, 145 Ga. App. 471, cert. dismissed, 242 Ga. 96 (1978).

Defendants correctly state the standard for sovereign immunity as it relates to **non-constitutional** state law claims. In the case cited by Defendant's, Plaintiff Sinkfield raised claims for injuries incurred when a fire truck operated by

Defendant Pike collided with his car. *Sinkfield v. Pike*, 201 Ga. App. 652 (1991). Those are claims of negligence and are statutory rather than constitutional in derivation. In contrast, the Moons articulated claims asserting violations of the constitutional guarantees afforded in Article I of the Georgia Constitution pertaining to their constitutional right to freedom of speech and right to be free of unreasonable search and seizure. Because these claims assert constitutional, rather than statutory, rights sovereign immunity does not apply.

## CONCLUSION

For all the foregoing reasons, the Moon request that Defendants' Motion to Dismiss be denied.

DATED: This the 23rd day of April, 2012.

Respectfully submitted,

/s/ Gerald Weber

_____
Gerald Weber
Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Phone: (404) 522-0507
wgerryweber@gmail.com

/s Craig Goodmark

_____
Craig Goodmark
Georgia Bar No. 301428

Goodmark Law Firm
Post Office Box 5259
Atlanta, Georgia 31107
(404) 668-3798
cgoodmark@gmail.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

```
------------------------------------------------------------
DEBORAH MOON and RONALD MOON,)
                                      )
                    Plaintiffs,       )
                                      )        Civil Action File
                                      )        No.: 5:11-cv-00180-CAR
        vs.                           )
                                      )
MAYOR CHARLES BROWN,                  )
in his official and individual capacity )
and CITY OF JACKSON, GEORGIA,         )
                                      )
                    Defendants.       )
------------------------------------------------------------
```

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that **RESPONSE TO SUMMARY JUDGMENT, STATEMENT OF MATERIAL FACTS IN DISPUTE AND EXHIBITS** was electronically filed with the Clerk of Court using the CM/ECF system, which serves notification of such filing to counsel of record, The counsel of record are:

> Thomas Richardson
> Chambless, Higdon, Richardson, Katz and Griggs, LLC
> Post Office Box 246
> Macon, Georgia 31202-0246
> 478.745.1181

DATED: This the 23d day of April, 2012.

> /s Gerald R. Weber
> _____
> Gerald Weber
> Georgia Bar No. 744878