UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DEBRA AND RONALD MOON, | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 5:11-CV-180 |
| MAYOR CHARLES BROWN AND THE CITY OF JACKSON, GEORGIA, | : |
| Defendants. | : |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COME NOW Mayor Charles Brown, in his official and individual capacity, and City of Jackson, Georgia, Defendants, and file this Reply Brief in Support of Motion for Summary Judgment, respectfully showing to the Court the following:

**I. Defendants remain entitled to summary judgment because Plaintiffs have no evidence, beyond speculation and conclusory statements, that towing their illegally parked vehicle was motivated by the message on the sign attached to the vehicle.**

Defendants remain entitled to summary judgment on Plaintiffs' First Amendment retaliation claim because Plaintiffs cannot carry their burden of showing a retaliatory motive existed for towing their vehicle. Plaintiffs have the burden of presenting "specific, nonconclusory" evidence that an improper motive existed for towing their vehicle. Brown v. Cochran, 171 F.3d 1329, 1332 (11th Cir. 1999). "In passing upon a motion for summary judgment, a finding of fact which may be inferred but not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exist." Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1564 (11th Cir. 1989)(citations

1

omitted). Although Plaintiffs' brief presents several conclusory statements regarding the motivation for towing their vehicle, none of these reasons is enough to survive summary judgment.

Unlike Plaintiff's brief implies, there is no affirmative evidence that Mayor Brown told anyone the reason for towing the Plaintiffs' vehicle was because of the political message on the sign. Plaintiffs place great significance on the Mayor's description of the vehicle to be towed as the one with the "political sign" in the back. Given how large and prominent the sign was on the vehicle, it is not surprising the Mayor chose this feature to describe the vehicle to be towed to the dispatcher. (Brown Dep. 10:18 to 11:13.) Plaintiffs, however, jump to the conclusion that the content of the political message on the sign must have been the Mayor's "reason" for towing the vehicle. Yet, never once in his conversation with the dispatcher did he say that the fact that the truck contained a "political" sign was the *reason* for towing the vehicle. (See Barlow Dep. 11: 16-24.) Further, never once since that day has Mayor Brown told anyone that the political nature of the sign was the reason for towing the vehicle. Rather, it was and has always been the Mayor's position that the reasons for towing Plaintiffs vehicle were that the vehicle was illegally parked and that the sign in the back violated the City of Jackson's sign ordinance. (Brown Dep. 12:13-16.) The Mayor expressly denied any political motivation for towing Plaintiffs' vehicle, and admitted that he voted for Austin Scott, the name that appeared on the Plaintiffs' sign and the candidate that the Plaintiffs supported. (Brown Dep. 10:2-15; Resp. to Plf.'s First Interrogatories to Defendants No. 7.) It is the Plaintiffs who have jumped to the conclusion that the towing was motivated by the political message on the sign, a conclusion that is based, at best, on inferences drawn from circumstantial evidence that are directly contrary to the positive and uncontradicted testimony of Mayor Brown.

Moreover, despite Plaintiffs' claims, there is no affirmative evidence that the City's sign ordinance was selectively enforced against Plaintiffs because of their political speech. Plaintiffs offer the affidavit of Commissioner Patterson for the proposition that Patterson displayed similar signs supporting his reelection in the City that were not confiscated by the City. Yet, Patterson does not ever say in his affidavit that he ever parked a truck with a sign in the back on the same unfinished city parking lot that the Plaintiffs parked their vehicle on. (See Patterson Aff.) Moreover, even if he did, Patterson has no personal knowledge that Mayor Brown ever saw the signs in question and chose not to have those vehicles towed.[1] (See Patterson Aff.) Thus, to the extent Plaintiffs claim that Patterson's affidavit somehow provides affirmative evidence of retaliation against them, that claim is without merit.

In addition, Plaintiffs have no evidence to support their claim that the City's alleged policy of selectively enforcing its sign ordinance based on the content of the sign demonstrates a retaliatory motive for removing their sign. Commissioner Patterson claims in his affidavit that a recorded conversation with a City employee demonstrates that the City selectively enforces its sign ordinance. (See Patterson Aff.)

There are several problems with this claim and Patterson's affidavit testimony. First, the content of the alleged statements of city employee Ridgeway in Patterson's affidavit are hearsay and inadmissible. See F.R.E. 801; see also Ross v. Corp. of Mercer Univ., 506 F. Supp. 2d 1325, 1340 (M.D. Ga. 2007)(holding that affidavit purporting to relay the content of a conversation between the affiant and a non-party was hearsay.) Second, even if they were admissible, Patterson's interpretation of Ridgeway's statements is inaccurate and conclusory. Patterson states that Ridgeway "indicates that it is the official policy of the City of Jackson to treat political

---

[1] Patterson's claim in his affidavit that "it is really impossible for me to believe" that Mayor Brown did not see his political signs during his campaign, despite being pure speculation, also demonstrates his lack of personal knowledge. (See Patterson Aff. ¶ 6.)

3

signs differently than signs with other content." (Patterson Aff. ¶ 7.) That is simply not the case. Nowhere in the recorded conversation that Plaintiffs produced does Ridgway make that representation. (See Exhibit to Patterson Aff.) Moreover, a reasonable interpretation of Ridgeway's comments to Patterson is that the City, regardless of the sign's message, only confiscates signs that are within the right of way. (See Exhibit to Patterson Aff.) Further, Mayor Brown has already testified that city collects signs of all types from around town whose placement violates the City's ordinances. (See Brown Dep. 25:11-22.) Finally, because the recording of this conversation picks up in mid-conversation, it is really impossible to tell the context in which Ridgeway is allegedly making these comments. Thus, for a myriad of reasons, Patterson's affidavit and his conversation with Ridgeway do not support Plaintiffs' claims, and Defendants remain entitled to summary judgment on those claims.

**II. Sovereign immunity applies to Plaintiffs' state law claims.**

Plaintiffs claim in their brief that their claims under the Georgia Constitution are not barred by Defendant City of Jackson's sovereign immunity. First and foremost, because no constitutional violation has occurred, a determination that the City is entitled to sovereign immunity under Georgia law is unnecessary. However, should the Court deem that an examination of this issue is in order, the City is entitled to sovereign immunity under Georgia law from Plaintiffs' Georgia constitutional claims.

The Georgia Constitution places the authority to waive the sovereign immunity of cities or municipalities in the hands of the Georgia General Assembly. GA. Const. Art. IX, Section II, Paragraph IX. The Georgia Code provides that "it is the public policy of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages." O.C.G.A. § 36-33-1(a). Although this

same code section provides for a limited waiver of sovereign immunity in connection with municipal liability for claims arising out of the use of insured municipal vehicles, that waiver is not applicable to other types of claims. See id.

In the present case, the City of Jackson is entitled to sovereign immunity from Plaintiff's claims. The claimed distinction Plaintiffs draw between the application of sovereign immunity to claims of negligence and other types of claims is directly contrary to the plain language of the Georgia Constitution and the Georgia Code. The City's sovereign immunity has not been waived for Plaintiff's state law claims. Therefore, the City remains entitled to sovereign immunity.

**VI. Conclusion**

For all the foregoing reasons, Defendants respectfully request this Court GRANT their Motion for Summary Judgment on all of Plaintiff's claims.

Respectfully submitted,

This 9th day of May, 2012.

/s/ Thomas F. Richardson
Thomas F. Richardson
State Bar No. 604325

/s/ Joseph D. Stephens
Joseph D. Stephens
State Bar No. 719383

Attorneys for Defendants, City of Jackson and Charles Brown

CHAMBLESS, HIGDON, RICHARDSON,
 KATZ & GRIGGS, LLP
3920 Arkwright Road, Ste. 405
P.O. Box 18086

5

Macon, GA 31209-8086

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

>Gerald Weber
>P.O. Box 5391
>Atlanta, GA 31107
>wgerryweber@gmail.com


>Attorney for Plaintiffs

>/s/ Thomas F. Richardson
>Thomas F. Richardson
>State Bar No. 604325

CHAMBLESS, HIGDON, RICHARDSON,
 KATZ & GRIGGS, LLP
3920 Arkwright Road, Ste. 405
P.O. Box 18086
Macon, GA 31209-8086