IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

---

DEBRA AND ROBERT MOON, )
)
    Plaintiffs, )
) Civil Action File
) No.: 5-11-cv-180 (CAR)
vs. )
)
MAYOR CHARLES BROWN, )
in his official and individual capacity )
and CITY OF JACKSON, GEORGIA, )
)
Defendants. )

---

## PLAINTIFFS' SUPPLEMENTAL BRIEF ON PUBLIC FORUM ANALYSIS

At this Court's request, this brief addresses whether the central Jackson public parking lot is a public forum, and addresses analysis under both the public forum and non-public forum analysis. This brief also addresses the content-based sign ordinance cases, and the "unbridled discretion" analysis both of which apply to both public and non-public fora.

## DESCRIPTION OF THE FORUM

The Moon's political sign was displayed in an open space in a central area directly across from and in the direct line of sight of the public square on a Sunday morning before church. Moon Depo., p. 26-27, 32; see Ex. 1; Google Earth Image of Jackson, Georgia with the Moon's car location marked with an

"X".[1] The lot is located in the southwest from the Courthouse and the truck was parked in the northeast corner of the lot nearest to Third Street (or Highway 16).[2] This location is in the very center of the City of Jackson and next to a much traveled state highway, as well as a "stones throw" from the county seat, county courthouse and locations where public and political meetings are held. See Moon Dep., p. 29-30; *Affidavit of R. Moon*, ¶5-6. Across the street, to the north from the empty lot is Big D's Drugstore that is not open on Sunday. Brown Depo., p. 10-11. To the east of the lot are offices of the Clerk of the Court and some private businesses. See Ex. 1; Pl. Ex 4-5 to Depositions (pictures of the space). Free speech activity is a natural consequence when any vehicle with a bumpersticker is parked in the lot.

---

[1] This image is used for demonstrative purposes only. This image predates the incident and still shows the former owners building in the space. At the time of the incident, this building had already been razed and the space contained no standing structures.

[2] Plaintiff Ronald Moon's affidavit is submitted to provide the Court supplemental factual information related to the issue of public fora raised by this Court. According to Mr. Moon and as depicted in photos attached to his affidavit, as recently as one week before the incident, the Butts County Republican Party held an official rally on the courthouse grounds in the line of sight of this location. At the rally, political signs were prominently displayed and citizens engaged in political expression less than fifty feet from the space in question. Ex. 2; *Affidavit of Ronald Moon*, ¶ 4-8. Mr. Moon took pictures of this rally on the courthouse lawn that have been produced to Defendants during discovery. *Id.* at Attachment 'A'.

Only one week prior to the Moon's truck being towed, a political event was held by the Butts County Republican Party on the courthouse lawn and in the very same area. Affidavit of Ronald Moon, ¶ 4. Just as the space where the Moon's truck was parked, the courthouse lawn contains no signage regarding parking or free speech activity. Id. at ¶5. Pictures of the event show the area is filled with signs endorsing certain political candidates and citizens engaging in political speech moving freely around the area. Id. at Exhibit A. Indeed, this courthouse lawn area, as well the surrounding area, has been used in the past and since for political events similar to the event held on October 2, 2010. Id. at ¶7. For these political events, the location the Butts County Republic Party booth has always been the southwest lawn of the courthouse property in the line of sight of the space where the Moon's truck was parked on October 10, 2010. Id. at ¶7.

The parking lot property is owned by the City but had not been designated for any specific city purpose. Brown Dep., p. 7. The City had not posted any signs regarding the use of the space, and had arguably permitted the public at large to occupy the space without any restriction. *Id.* Cars of private citizens parked in this space everyday and citizens used the space as overflow parking for special events. Riley Dep., p. 7; Moon Dep., p. 30. At any given time, Mr. Moon had seen upwards of 40 cars parked in that particular lot. Moon Dep., p.

The lot had (1) no signs to indicate it was public property, (2) no signs to indicate that the location was under construction, and (3) no signs to indicate that parking was prohibited or that free speech was restricted in that area.  Riley Dep 7.

More specifically, Police Chief Riley and Dispatcher Barlow both testified that the impounding of the Moon's truck because of its political sign was the first time a vehicle had ever been towed from the downtown lot in question:

> Q: Did you ever have any vehicles impounded from that lot -- other than the Moons' that we're talking about, did the department ever have any vehicles impounded from that lot?
>
> A: No, sir.

Riley Dep 15; Barlow Dep 12.

As set out below, the parking lot here should be considered a public forum and the Mayor's *ad hoc* restriction on speech fails under both public and non-public forum analysis.  Moreover, public fora analysis has not generally been used for restrictions on signs based upon their content, and absent notice and clearly defined standards, a restriction on speech in parking lots violates the "unbridled discretion" prohibition regardless of forum.

I. **WHEN A PUBLIC PARKING LOT IS NOT FOR A SPECIAL PURPOSE, IT IS A PUBLIC FORA**

Regulation of speech on government property that has traditionally been available for public expression is subject to the highest scrutiny. In such locales, the "strict scrutiny" standard applies and regulations survive only if they are

content neutral and narrowly drawn to achieve a compelling state interest. *International Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678-679 (1992) citing *Perry*, 460 U.S. at 45. A second category of public property is the designated public forum, whether of a limited or unlimited character -- property that the State has opened for expressive activity by part or all of the public. *Ibid*. This second category may come into play when a government specifically designates a locale for free speech activity, or if it acquiesces in allowing free speech activity to occur. Regulation of such property is subject to the same limitations as that governing a traditional public forum. *Id.*, at 46. Finally, there is all remaining public property i.e., "non-public fora." For this last category of property, a challenged restriction on speech need only be reasonable and viewpoint neutral. *Ibid*.

When applying the public forum analysis, courts are directed to determine the "existence of a right of access to public property and the standard by which limitations upon such a right" by evaluating the "character of the property at issue." *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 44 (1983). "Special attributes" of a forum are relevant "since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved." *United States v. Kokinda*, 497 U.S. 720 (1990) quoting *Heffron*, 452 U.S. at 650-651. *Warren v. Fairfax Cty.*, 196 F.3d 186 (4th Cir. 1999) (en banc) ("The typical traditional public forum is property which

has the physical characteristics of a public thoroughfare, which has the objective use and purpose of open public access or some other objective use and purpose inherently compatible with expressive conduct.") (citation omitted).

Specifically with respect to parking lots and public fora, this Circuit has recognized that several types of <u>special use parking lots</u> are non-public fora, either because they are private, or because they are targeted to and function for special uses such as access lots to airports, post offices or school parking lots. *Moran v. Cannon,* 362 Fed. Appx. 88, 98-88 (11th Cir. 2010) (law was not clearly established that a *private* parking lot was a public forum, and officers directed protester across the street to public area), *but see Childs v. Dekalb Cty., Ga.*, 286 Fed. Appx. 687 (11th Cir. 2008) (seizure of First Amendment protected writing and persons in restaurant parking lot violated Fourth Amendment); *ISKON Miami v. Metro. Dade Cty., Fla.*, 14 F.3d 1282, 1289 (11th Cir. 1998) ("Like the sidewalks adjoining the post office …, the sidewalks and parking lots adjacent to the Miami airport terminals are nonpublic fora; the sidewalks and parking lots are intended by the County to be used for air travel-related purposes, "not to facilitate the daily commerce and life of the neighborhood or city."); *Bloedron v. Grube*, 631 F.3d 1218, 1234 (11th Cir. 2011) ("All of the University's entrances are identified with large blue signs and brick pillars, all of the buildings are identified with large blue signs, and all of its parking lots have signs restricting their use to GSU community members").

**With those special use exceptions, parking lots are considered traditional public fora**. In *Naturists Society, Inc. v. Fillyaw*, what appears as the closest Eleventh Circuit case on the public fora of parking lots, a nudist group sought to have a demonstration at a beach park area. 958 F.2d 1515 (11th Cir. 1992). The district court found that the area was more a beach than a park, and determined the area was a non-public fora. The Eleventh Circuit reversed, holding that while some of the facility was indeed a beach, there were other areas such as "parking lots" that made it a traditional public forum:

> The district court believed it was "stat[ing] the obvious" when it remarked that the park is a "beach." But, as the diagram appended to the court's opinion reveals, the park is more than a beach. In particular, it **contains parking lots**, a nature center, and walkways. Speech and expressive conduct in these areas may not pose the same evils as on the beach. In declaring the park a non-public forum based solely upon its beach characteristics, the district court ignored other areas of the park which are not beach. *Id.* at 1522 (emphasis added).

*Accord United States v. Fransden*, 212 F.3d 1231, 1237-38 (11th Cir. 2000) (lower court erred in concluding that park generally, including "parking lots" was not a traditional public forum).

In *Conner v. Palm Beach County, Florida,* a district court addressed a limit on political speech in parking lots finding both that the parking lot was a traditional public fora and that the limitation on speech was content based. 1996 WESTLAW 438779, *9 (S.D. Fla. May 29, 1996). Analyzing both the fora question, and the content-based nature of the restriction the court held:

7

> Section 20(D) of the Policy states in part: "No person shall drive or park or station on any park road or parkway or parking lot any vehicle displaying a sign ... or otherwise display advertising.". The practical effect and intent of Defendant's Policy regarding its parks is the eradication of Plaintiff's ability to organize and engage in activities in a public forum which the Defendant considers political advocacy activity and/or advertising for a political campaign. Under Defendant's Policy, speech with political content is only allowed by permission from the Defendant. Under Policy Sections 20(C) and 20(D) all political "advertising" is completely banned. A "*content-based* restriction on *political speech* in a *public forum* ... must be subject to the most exacting scrutiny." *Id.*

In *Krantz v. City of Fort Smith*, church members challenged limitation on placing literature on unattended vehicles on streets and in parking lots. Without even the necessity of argument, the defendants "concede[d] that public streets and parking lots are public forums...." 160 F.3d 1213, 1218 (8th Cir. 1999). The Eighth Circuit found that restrictions based on a government interest to prevent littering were not narrowly tailored even though content neutral. *Id.*

If the parking lot is a public forum, applying strict scrutiny, the Mayor's impounding of the vehicle based on a reason the jury can conclude was "political speech" is content based and unconstitutional. The content based decision to tow the Moon's truck was also not supported by any compelling interest and is not narrowly tailored. While a content-neutral time, place and manner ordinance regulating some speech in parking lots might be possible, there was no such ordinance here. Rather,

without justification, the Mayor arguably targeted one subject matter of signs for disfavored treatment. *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1229 (11th Cir. 2006) (striking down ordinance disfavoring political signs).

## II. EVEN UNDER NON-PUBLIC FORUM ANALYSIS, SUMMARY JUDGMENT SHOULD BE DENIED

As set out in prior briefing, even if the parking lot were a non-public forum, there is evidence to show that a restriction only of "political signs" is neither reasonable nor viewpoint neutral. There is evidence in this record to support the notion that Mayor Brown impounded the Moons truck because he opposed certain candidates i.e., viewpoint discrimination under the First Amendment. Brown Dep 5; R. Moon Dep 56-60; D. Moon Dep 10. Indeed, as the Affidavit of Commissioner Patterson indicates, he had no less than four trucks with signs for his own candidacy prominently parked in a variety of public lots throughout the City of Jackson for several months. Patterson Aff. ¶¶ 3-7. These signs used the same frame as the Moons' truck and sign, only the political content was different. *Id.* None were towed. *Id.* This evidence creates a jury question as to viewpoint discrimination, i.e., targeting one candidate's signs.

Moreover, if a jury were to conclude that the reason for impounding was that the truck had a "political sign," then the restriction of signs simply because they are political is not reasonable. *Beaulieu v. City of Alabaster*, 454 F.3d 1219,

1229 (11th Cir. 2006) (restriction on only political signs struck down). Moreover, the complete lack of standards utilized by the Mayor for his ad-hoc targeting of a political sign is unconstitutional regardless of the type of forum. *Sentinel Comm. Co. v. Watts*, 936 F.2d 1189, 1197-1200 (11th Cir 1991) ("Our holding *infra* that rest areas along the interstate system are nonpublic fora does not eliminate the constitutional requirement of standards for discretionary licensing."); *Langton v. State*, 261 Ga. 878 (1992) (no reasonable basis for standardless prohibition on speech in parking lots).

### III. PUBLIC FORUM ANALYSIS MAY NOT BE APPLICABLE, AND THIS CASE MAY BE MORE ANALOGOUS TO CONTENT-BASED SIGN RESTRICTION CASES

With respect to content-based restrictions on signs, the Supreme Court and Eleventh Circuit have not generally applied public forum analysis. Thus, it may not be appropriate to apply that doctrine particularly because a sign on a vehicle will travel from place to place.

Justice Kennedy warned against a formulaic use of the public forum analysis as a tool to restrict speech. In his concurring opinion in *Lee*, 505 U.S. at 693, he states:

> An earlier opinion expressed my concern that "if our public forum jurisprudence is to retain vitality, we must recognize that certain objective characteristics of Government property and its customary use by the public may control" the status of the property. *United States v. Kokinda*, 497 U.S. 720, 737 (1990). The cases before us do not heed that principle. *Our public forum doctrine ought not to be a*

10

> *jurisprudence of categories rather than ideas or convert what was once an analysis protective of expression into one which grants the government authority to restrict speech by fiat*. I believe that the Court's public forum analysis in these cases is inconsistent with the values underlying the Speech and Press Clauses of the First Amendment.

*Lee*, 505 U.S. at 693-694. Accordingly, commentators have highlighted the sometimes problematic nature of the public forum analysis:

> Conceptual approaches such as that embodied in the nonpublic-forum doctrine simply yield an inadequate jurisprudence of labels. In place of careful, candid weighing of competing free speech and public order values, with meaningful deference accorded First Amendment interests, judicial opinions embodying conceptualistic, categorical analyses reflect under-the-table definitional balancing. Legal outcomes depend on whether the speech is placed in or out of the category, on what pigeonhole of law is determined to apply. In the process, free speech values tend to be minimized or ignored; government interests tend to be emphasized and exaggerated.

Thomas Dienes, *The Trashing of the Public Forum: Problems in First Amendment Analysis*, 55 Geo. Wash. L. Rev. 109, 110-15 (1986); See also, Stephen K. Schutte, *International Society for Krishna Consciousness, Inc. v. Lee: The Public Forum Doctrine Falls to a Government Intent Standard*, 23 Golden Gate U.L. Rev 563 (1993).

Public fora analysis has not been used in cases from the Supreme Court or the Eleventh Circuit analyzing content-based restrictions on signs. *City of Ladue v. Gilleo*, 512 U.S. 43 (1994) (sign ordinance content based-struck down); *Metromedia v. City of San Diego,* 453 U.S. 490, 507, 508 (1981) (newsrack ordinance content

based-struck down); *Linmark Assoc., Inc. v. Willingboro*, 431 U.S. 85 (1977) (sign ordinance content based-struck down). The Mayor's decision as final-decisionmaker to target "political signs" (and the City's general practice to target political signs but not real estate signs) may be better analyzed using these factually-closer cases that do not perform public forum analysis.[5]

The Eleventh Circuit's decision in *Beaulieu v. City of Alabaster*, appears to be the closest binding authority for this Court. 454 F.3d 1219, 1229 (11th Cir. 2006). While that case involved an ordinance, rather than a decision by the final decisionmaker here, the core issue was whether treating political signs less favorably than real estate signs is an unconstitutional content-based restriction on speech. After discussing the "core" value of political speech in First Amendment analysis, this Circuit concluded that "strict scrutiny" applied – including the "narrow tailoring" to a "compelling government interest." *Id.* at 1234. "In sum, under the sign ordinance it is easier, cheaper, and faster for

---

[5] Indeed, in cases involving content discrimination, the Supreme Court has consistently found free speech violations no matter the forum. *Carey v. Brown*, 447 U.S. 455 (1980) (public sidewalk as a public forum); *Grayned v. City of Rockford*, 408 U.S. 104 (1972) (sidewalk next to school as a public forum); *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972) (150 feet from a school building as a public forum). *Widmar v. Vincent*, 454 U.S. 263 (1981) (College classroom as a limited public forum-where there was "no restriction of access to public property" content-based restrictions did not survive); *Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530 (1980) (Monthly utility bill inserts as a limited public forum).

Beaulieu to post a real estate sign than a campaign sign. Because political signs are subject to more regulatory burden than real estate signs, the sign ordinance discriminates against political speech in favor of commercial speech. It is a content-based regulation." *Id.* at 1233. Applying strict scrutiny, the disfavoring of political signs was unconstitutional. *See also Dimmitt v. City of Clearwater,* 985 F.2d 1565 (11th Cir.1993) (sign ordinance struck down for exempting certain signs based on content); *Solantic, LLC v. City of Neptune Beach,* 410 F.3d 1250 (11th Cir.2005) (same).[6]

Because a jury can conclude that the Mayor impounded the Moons' vehicle because of its "political sign," a content-based reason, summary judgment should be denied.

### IV. THE MAYOR CANNOT IMPOSE RESTRICTIONS ON SPEECH WITHOUT WARNING AND STANDARDS UNDER THE FIRST AMENDMENT

That the Mayor made an off-the-cuff decision, without warning or notice, to impound a vehicle because it had a "political" sign (rather than acting pursuant to an ordinance) makes this case even worse than *Beaulieu* and presents

---

[6] For decisions collecting the authorities from all Circuits see: *Reed v. Town of Gilbert, Ariz.*, 587 F.3d 966, 982 (9th Cir. 2009) (collecting cases holding that differential treatment of political signs versus commercial and real estate signs is a content-based restriction on speech); *Ballen v. City of Redmond*, 466 F.3d 766 (9th Cir. 2006) (striking down portable sign ordinance that had exemption for political and real estate signs).

a separate First Amendment problem – "unbridled discretion." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992) (must be clear and definite standards when regulating free speech); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150-51 (1969) ("without narrow, objective and definite standards to guide," limit on speech unconstitutional). Cases suggest this is so because, by giving unbridled discretion, the restriction is necessarily not narrowly tailored. *See Miami Herald Pub. Co. v. Hallandale*, 734 F.2d 666, 675 (11th Cir. 1984) (after observing that the ordinance vested unbridled discretion in licensing official, noting that a more objective basis for determining compliance with ordinance was possible, and thus the ordinance was not narrowly tailored); *Plain Dealer Pub. Co. v. City of Lakewood*, 794 F.2d 1139, 1146 (6th Cir. 1986), *aff'd*, 486 U.S. 750 (1988) (stating that ordinance was not narrowly tailored because it provided board with standardless discretion). The result in these "unbridled discretion" cases applies to both public forums and non-public forums. *Sentinel Comm. Co. v. Watts*, 936 F.2d 1189, 1197-1200 (11th Cir 1991) ("completely standardless and unfettered discretion" to allow newsracks at interstate rest areas unconstitutional regardless of whether the rest stops are public fora) ("Our holding *infra* that rest areas along the interstate system are nonpublic fora does not eliminate the constitutional requirement of standards for discretionary licensing.").

Indeed, the Georgia Supreme Court has held that absent an expressed regulation, a citizen cannot be prohibited from distributing literature in a public

14

parking lot whether it is a public forum or not. *Langton v. State,* 261 Ga. 878 (1992). There, a citizen sought to distribute literature in the parking lot of a Department of Labor facility and was arrested based upon a "never identified" regulation that purported to limit free speech activity in such parking lots. *Id.* at 879, n. 1. While the trial court had found that the parking lot was a non-public forum, the Georgia Supreme Court concluded: "The undisputed evidence is that appellant was on the premises of the Department of Labor solely for expressive purposes, and since there is no evidence that any valid restriction forbade that conduct, the unmistakable conclusion is that, as a matter of law, appellant was on the property under the 'authority' of the free speech guarantees of the First Amendment…." *Id.; United States v. Fransden*, 212 F.3d 1231, 1237-38 (11th Cir. 2000) (lack of standards renders restriction on speech in parks, including speech in parking lots, unconstitutional).

Thus, the absence of notice and standards to cabin the Mayor's discretion renders the Mayor's off-the-cuff and for the first time ever prohibition of political signs violative of the First Amendment regardless of forum.

### CONCLUSION

For the reasons set forth herein, a jury can conclude that the Moon's truck was impounded because it had a "political" sign. With that finding, the Moon's prevail under public forum analysis, non-public forum analysis, the content-based sign ordinance analysis or the unbridled discretion analysis.

Respectfully submitted this 19th day of December 2012.

/s/ Gerald Weber
Gerald Weber
Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Phone: (404) 522-0507
wgerryweber@gmail.com

/s/ Craig Goodmark
Craig Goodmark
Georgia Bar No. 301428

Goodmark Law Firm
209 B Swanton Way
Decatur, Georgia 30303
(404) 719-4848
cgoodmark@gmail.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DEBRA AND ROBERT MOON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action File |
| ) | No.: 5-11-cv-180 (CAR) |
| vs. ) | |
| ) | |
| MAYOR CHARLES BROWN, ) | |
| in his official and individual capacity ) | |
| and CITY OF JACKSON, GEORGIA, ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served by email a copy of Plaintiffs' Supplemental Brief On Public Forum Analysis upon the following counsel for defendants:

Tom Richardson: TRichardson@chrkglaw.com

Jon Travis Hall: thall@chrkglaw.com

DATED: This 19th day of December, 2012.

/s/ Gerald Weber
Gerald Weber
Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Phone: (404) 522-0507
wgerryweber@gmail.com

        /s/ Craig Goodmark
        Craig Goodmark
        Georgia Bar No. 301428

Goodmark Law Firm
209 B Swanton Way
Decatur, Georgia 30303
(404) 719-4848
cgoodmark@gmail.com
Attorneys for Plaintiff