UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DEBRA AND RONALD MOON, | : |
| | : |
| Plaintiffs, | : |
| | : Civil Action No. 5:11-CV-180 |
| v. | : |
| | : |
| MAYOR CHARLES BROWN AND THE | : |
| CITY OF JACKSON, GEORGIA, | : |
| | : |
| Defendants. | : |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COME NOW, Charles Brown and the City of Jackson, Georgia, Defendants, and file this Supplemental Brief in Support of Motion for Summary Judgment, respectfully addressing the Court's questions as follows:

**I. The unfinished gravel parking lot where Plaintiffs' truck was parked at the time it was towed was not a public forum.**

The unfinished gravel parking lot where the Plaintiffs' vehicle was parked is a non-public forum. The City of Jackson acquired the property several years ago from a used car dealership. (Brown Dep. 19:22 to 20:22.) The City demolished the building that sat on the property. (Id.) The City planned to develop the property, but at the time the Plaintiffs parked on the property, the development was unfinished. (Brown Dep. 30:15 to 31:4.) After the building on the property was demolished, the owner of a nearby drugstore approached the City and asked for permission for his employees to park on the property during business hours. (Brown Dep. 19:22 to 20:22.) The City granted that request. (Id.) However, no other private citizen had permission to park in that lot. (Brown Dep. 20:17-22.)

1

Plaintiffs have no evidence that the gravel parking lot is a public forum, or a piece of government property that has been specifically designated as an area for expressive activity. This lot was not a city street or a city park. Rather, it was simply a piece of property recently acquired by the City where the City had recently razed a building. This lot has never been specifically designated for expressive activity, and Plaintiffs have no evidence to the contrary.

Just like a private property owner, a governmental entity that owns property has the power to preserve control over the use of its property. U.S. v. Gilbert, 920 F.2d 878, 884 (11th Cir. 1991). The Constitution does not require a governmental property owner to grant access to every type of government property, regardless of its nature or use, for speech-related purposes. Id.; see also Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 814-815 (1984)(reasoning that the First Amendment does not guarantee access to government property merely because it is owned by the government.) Rather, the extent to which a government property owner can regulate speech on public property depends on the nature of the property and how the government uses it. Taxpayers for Vincent, 466 U.S. at 814-815; Gilbert, 920 F.2d at 844.

There are essentially three types of government property for the analysis of whether regulating speech on that property is consistent with the First Amendment. The first type of government property is the traditional public forum. Gilbert, 920 F.2d at 844. Under First Amendment case law, "regulation of speech on government property that is traditionally open to the public for expressive activity, such as public streets and parks, is subject to strict scrutiny." Id. The second type of government property is government property that, although not a traditional public forum, has been "specifically dedicated as a place for expressive activity." Id. Regulation of speech on this type of government property is also subject to strict scrutiny. Id.

The third type of government property is property the government owns, but that is "not by tradition or designation a forum for public communication." Id. Regulation of speech on this type of government property must only be reasonable and viewpoint neutral. Id. The fact that political speech occurred on a particular piece of government property in the past does not transform it into a public forum. Id. at 884-885(holding that "[s]elective access does not transform government property into a public forum."). Rather, a nonpublic forum is converted into a public forum only by "intentionally opening a nontraditional forum for public discourse." Id. at 884(citations omitted). As the Eleventh Circuit commented in Gilbert, "if the law were otherwise, the government would be required to stand guard over its property ready to chase away anyone who sought to use the property for expressive conduct, for fear of creating a public forum by acquiescence." Id. at 885.

Moreover, physical proximity to a traditional public forum does not convert government property that has not been intentionally opened for public discourse into a public forum. In Gilbert, a frequent protester outside the Richard B. Russell Federal Building in downtown Atlanta challenged an injunction on his activities around the building. Id. at 881. In evaluating the nature of the building and the property surrounding the building, the Eleventh Circuit Court of Appeals differentiated between the glass-enclosed lobby on the ground floor, the portico area directly outside the lobby, and the plaza that surrounded the building. Id. at 884-885. The Court reasoned that the lobby and the portico area were nonpublic fora, while the plaza area surrounding the building was a traditional public forum. Id. The portico area and the plaza area surrounding the building directly abut one another, yet the Court defined the portico area as a nonpublic forum and the plaza area as a public forum. Id. at 881, 884-885. Thus, physical proximity to a public forum alone does not determine a particular government property's status.

In the present case, Plaintiffs allude in their brief to the fact that the lot is in close physical proximity to the courthouse lawn as evidence that the lot is a public forum. However, just like in Gilbert, the fact that the lot is close to what could be considered a public forum has no bearing on whether the lot in question is a public forum. Moreover, the Plaintiffs also mention in their brief that signs were displayed on the courthouse lawn during a festival that were political in nature. Again, just like in Gilbert, the fact that expressive activity was conducted at an adjacent government property has no bearing on whether a particular government property is a public forum.

Finally, even if Plaintiffs could show that expressive activity had occurred on this particular gravel lot in the past, which Plaintiffs cannot show, that fact would not convert the lot into a public forum. Rather, as the Eleventh Circuit held in Gilbert, Plaintiffs must show that the City of Jackson intentionally designated this particular lot for expressive conduct. Plaintiffs have no such evidence. Accordingly, the gravel lot where Plaintiffs parked their vehicle was a non-public forum.

**II. Because the parking lot was not a public forum, the regulation of speech on that property must only be reasonable and viewpoint neutral.**

Because the gravel lot was not a public forum, regulation of speech on that property is not subject to strict scrutiny. Rather, the regulation of speech in a non-public forum must be reasonable and viewpoint neutral. Gilbert, 920 F.2d at 886. Significantly, the regulation need not be the "most reasonable" or the "only reasonable" method of regulating speech on the property, and need not be narrowly tailored to serve a compelling government interest. Id. Rather, in conducting a review under the reasonableness standard, a regulation that is consistent with "common-sense" is sufficient, in light of the purpose the government property was intended to serve. Id.

It is reasonable, under First Amendment caselaw, to regulate the placement of signs on public property. See City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 814-815 (1984). Even further, a City government can, consistent with the First Amendment, prohibit the placement of signs on public property and public right of ways for the purposes of protecting community esthetics and preventing visual blight. Id. In Vincent, the Plaintiffs argued that the City of Los Angeles' ordinance, which prohibited the placement of signs on City property, such as lampposts, violated the First Amendment. Id. The Plaintiffs argued in part that the lampposts should be considered a public forum, and thus the City's ordinance should be subject to strict scrutiny. Id. The United States Supreme Court rejected this argument, and held that the City's ordinance was constitutional. Id. The Court cited the ordinance's viewpoint neutrality, the City's legitimate interests in the esthetics of the City, and the ample alternative channels of communication available to the Plaintiffs for the expression of their ideas. Id. Further, the Court rejected the notion that, simply because the government owns the property where the expressive activity occurs, the government must allow the expressive conduct or be subject to strict scrutiny. Id. Thus, a city government can, consistent with the First Amendment, regulate the placement of signs on public property.

In the present case, the towing of Plaintiffs' vehicle, even though it tangentially affected the expressive activity on the sign in the back of their truck, is reasonable and viewpoint neutral. The mayor of the City of Jackson, Defendant Charles Brown, saw a vehicle parked on city-owned property without the permission of the City. (Brown Dep. 22:16 to 23:7.) The lot where the vehicle was parked had recently been acquired by the City, and the only private citizens with permission to park on the lot were employees of the nearby pharmacy. The Plaintiffs' vehicle also happened to have a sign attached to its bed. As discussed in Defendants' Brief in Support of

5

Motion for Summary Judgment, the Plaintiffs have no evidence that their vehicle was towed because of the political message on the sign attached to its bed.

Moreover, the City's sign ordinance prohibits the placement of signs on property without the property owner's permission. (Jackson, GA Zoning Ordinance, art. XII, § 12-4(1)(a), p. 48, Plaintiff's Ex. 3 to Dep. of Charles Brown.) No signs, regardless of their message, are permitted on public right of ways. Id. Further, the ordinance permits the city to remove a sign from the public right of way or from public property if in violation of the ordinance. Id. at § 12-5(6). Finally, the ordinance also prohibits the use of portable signs. Id. at § 12-6(3). Mayor Brown testified that the City consistently picks up signs, no matter their message, when they are in the public right of way. (Brown Dep. 25:11-22.) Mayor Brown remembers calling the dispatcher almost daily regarding illegal signs. (Id.)

Just like in Vincent, this ordinance and the mayor's actions in enforcing the ordinance were viewpoint neutral and reasonable in light of the City of Jackson's legitimate interests in the esthetics of the City and keeping the property clear and available for on-going construction. Plaintiffs had and continue to have ample alternative channels of communication for their ideas. Plaintiffs could have parked their vehicle on privately owned property, with the property owner's permission, and still conveyed their ideas to other members of the public. However, because Plaintiffs chose to place their vehicle, and thus their sign, on public property that was a non-public forum without the City's permission, the Plaintiffs were subject to reasonable regulation by the City. If the law were otherwise, Plaintiffs could park their truck on any City-owned property, no matter its nature or use, and only be regulated if the regulation met the strict scrutiny standard. This is not the law. Accordingly, Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted,

This 7th day of January, 2013.

/s/ Thomas F. Richardson
Thomas F. Richardson
State Bar No. 604325


/s/ Joseph D. Stephens
Joseph D. Stephens
State Bar No. 719383

Attorneys for Defendants, City of Jackson and
Charles Brown

CHAMBLESS, HIGDON, RICHARDSON,
 KATZ & GRIGGS, LLP
3920 Arkwright Road, Ste. 405
P.O. Box 18086
Macon, GA 31209-8086

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2013, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

        Gerald Weber
        P.O. Box 5391
        Atlanta, GA 31107
        wgerryweber@gmail.com


        Attorney for Plaintiffs


                                              /s/ Thomas F. Richardson
                                              Thomas F. Richardson
                                              State Bar No. 604325

CHAMBLESS, HIGDON, RICHARDSON,
  KATZ & GRIGGS, LLP
3920 Arkwright Road, Ste. 405
P.O. Box 18086
Macon, GA 31209-8086